IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| DALE DANA, | : | No. 4:14-cv-01861 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| BAKER HUGHES, INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

September 21, 2015

Applying the principles set forth by the Supreme Court of the United States in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), this decision evaluates the sufficiency of Plaintiff Dale Dana's claim that Defendant Baker Hughes, Inc. has violated § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Because the Court finds that Plaintiff's Amended Complaint fails to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570), Defendant's Motion to Dismiss is granted.

**I. BACKGROUND**

### A. Plaintiff's Employment History with Defendant

Defendant is an oilfield services company headquartered in Houston, Texas, with a facility in Mill Hall, Clinton County, Pennsylvania. ECF No. 17 at 2.

Plaintiff was employed by Defendant as a "Repair and Maintenance Manager" at its Mill Hall location from approximately 1998 until September 25, 2013. Id.[1]

On February 21, 2013, Plaintiff exacerbated his chronic, degenerative knee condition while helping his wife down the stairs at home. Id. Soon thereafter, Plaintiff informed Defendant of his condition, sought medical treatment, and was placed on short-term disability leave. Id. Plaintiff remained on disability leave until July 22, 2013. Id. at 3. During that time, Plaintiff worked for Defendant for approximately 20 to 30 hours per week from home, creating work schedules, approving invoices, running and checking expense reports, preparing and responding to emails, conducting telephone calls with clients and other employees, and assisting with hiring. Id.

On July 22, 2013, Plaintiff was copied on an email sent to certain of Defendant's employees indicating that they should no longer contact Plaintiff as their manager. Id. Around the same time, Plaintiff's physician released him back to work with restrictions. Id. Under the restrictions, Plaintiff was not permitted to do any of the following: walk for more than one hour before having to rest, climb ladders, lift more than ten pounds, engage in excessive squatting, or kneel on his left knee. Id. Plaintiff was also required to wear a knee brace at all times. Id.

Plaintiff informed Defendant of these restrictions and requested that he be

---

[1] Defendant indicates that Plaintiff's official employer was Baker Hughes Oilfield Operations, Inc., a wholly-owned subsidiary of Defendant's. ECF No. 21 at 3 n.2.

permitted to return to work. Id. at 4. According to Plaintiff, he had previously worked through prior episodes of disability during his employment with Defendant under identical medical restrictions, which did not affect his job performance. Id. However, Plaintiff's supervisor, Michael Sutler, informed him that in order to return to work, he would need to be released with no restrictions. Id.

On August 19, 2013, Plaintiff's physician released him back to work with fewer restrictions than those initially placed on him in the July directive. Id. Plaintiff informed Defendant of the reduced restrictions and requested that he be permitted to return to work. Id. Shortly after Plaintiff's request, Defendant informed him that he would still not be accepted back to work. Id. at 5. Defendant ultimately fired Plaintiff on September 25, 2013. Id.

**B. Plaintiff's First Complaint and Defendant's First Motion to Dismiss**

On September 24, 2014, Plaintiff filed a Complaint against Defendant with this Court, alleging violations of § 504 of the Rehabilitation Act of 1973, the Fair Labor Standards Act, and the Pennsylvania Minimum Wage Act. ECF No. 1. On November 24, 2014, Defendant filed a Motion to Dismiss. ECF No. 5. On April 28, 2015, this Court filed an Order and Memorandum Opinion dismissing all of Plaintiff's claims without prejudice. ECF No. 15 at 6; ECF No.16.

Concerning his § 504 claim, Plaintiff's initial Complaint alleged that "[u]pon information and belief, Defendant is a recipient of federal funds." ECF No. 1 at 5.

In dismissing Plaintiff's § 504 claim, this Court observed that Plaintiff "provide[d] no other facts to support this allegation." ECF No. 15 at 6. The Court went on to state that "Plaintiff's pleadings on the matter are vague and fail to properly allege that Defendant is a recipient of federal financial assistance." This was particularly true in light of Defendant's contention that "Plaintiff has failed to plead sufficient facts that show that the Defendant received federal funds under a program or activity operated by or applying to the Defendant as a whole." ECF No. 15 at 7.

### C. Plaintiff's Amended Complaint and Defendant's Second Motion to Dismiss

On May 19, 2015, Plaintiff filed his Amended Complaint with this Court, this time only alleging a violation of § 504. ECF No. 17. The Amended Complaint contains the following allegation: "Defendant is a recipient of federal financial assistance in the form of, inter alia, contracts entered into with government agencies and grants." Id. at 5. It also alleges that from fiscal year 2012 through fiscal year 2014, Defendant or its subsidiaries were party to ten federal contracts and received eleven federal grants. Id. at 6–7. The Amended Complaint also states that "[u]pon information and belief, Defendant continues to receive federal financial assistance pursuant to contracts entered into with federal government agencies and grants from federal government agencies." Id. at 7.

Plaintiff has attached three exhibits to his Amended Complaint, each of which is a printout from the website www.usaspending.gov seeming to list several

government contracts and grants awarded to Defendant or its subsidiaries from fiscal year 2012 through fiscal year 2014. ECF No. 17 at Exs. A–C. The list format of the three printouts provides no substantive facts about the nature or extent of each award, although each entry in the list does contain an "Award ID." Id. Exhibit A contains a list of awards that are categorized either as "Contracts" or "Grants" received during fiscal year 2012, while Exhibits B and C contain lists of awards categorized solely as "Grants" received during fiscal years 2013 and 2014, respectively.[2] Id. No awards are categorized as "Contracts" on the fiscal year 2013 through fiscal year 2014 exhibits. Id. Further, the value "$0" is listed in the "Award Amount" field for each of the grant entries contained in all three of the exhibits.[3] Id. Plaintiff has pleaded no factual allegations indicating the nature, extent, location of performance, or purpose of any of the alleged awards.

Lastly, Plaintiff's Amended Complaint has cited to the definition of "Federal financial assistance," which appears in the section of the Code of Federal Regulations interpreting § 504 at 45 C.F.R. § 84.3(h). ECF No. 17 at 6. That regulation expressly excludes "procurement contract[s]" from the definition of "Federal financial assistance." Id.

---

[2]  Plaintiff has supplied no factual allegations indicating what is meant by the categorization "Contracts," the types of agreements that come within that definition, and specifically, whether that category includes or excludes procurements contracts.

[3]  Similarly, Plaintiff provides no explanation as to why the value of each grant reads "$0," what projects each grant was earmarked for, the location of receipt, or the purpose and extent of the funding, if any grant funding was disbursed at all.

On June 16, 2015, Defendant filed its second Motion to Dismiss. ECF No. 20. Defendant argues that "as a matter of law, Plaintiff has failed to plead sufficient facts to support his allegations that Baker Hughes is a 'recipient of federal assistance' for purposes of Section 504" because "he does not adequately allege . . . a 'program or activity' operated by or applying to Baker Hughes as a whole." ECF No. 21 at 5. The Court agrees and now grants Defendant's Motion.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading," In re Hydrogen Peroxide Litigation, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)), and "streamlines litigation by dispensing with needless discovery and factfinding." Neitzke v. Williams, 490 U.S. 319, 326–27 (1989). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Id. at 326 (citing Hishon v. King & Spalding, 467 U. S. 69, 73 (1984)). This is true of any claim "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." Neitzke, 490 U.S. at 327.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]." Twombly, 550 U.S. at 556. This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557 (internal quotations omitted)).

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678 (internal citations omitted). "After Iqbal, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)

(Nygaard, J.). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210–11 (internal citations omitted).

## III. ANALYSIS

"To prevail on a claim under Section 504, a plaintiff must demonstrate that: (1) she is a 'handicapped individual' under the Act; (2) she is 'otherwise qualified' for the position sought; (3) she was excluded from the position sought solely by reason of her handicap; and (4) the program or activity in question receives federal financial assistance." Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 551 F.3d 193, 198 n.3 (3d Cir. 2008) (emphasis in original) (quoting Strathie v. Dep't of

Transp., 716 F.2d 227, 230 (3d Cir.1983)).[4] Thus, "the question of whether the entity received federal funds is important . . . in order to make out a prima facie case under the [Rehabilitation Act]." Haybarger, 551 F.3d at 198 n.3. Defendant contends that this element of Plaintiff's prima facie claim—receipt of federal financial assistance as contemplated by § 504—is factually unsupported.

The Court must thus decide whether Plaintiff has alleged sufficient facts to plausibly suggest that Defendant falls within § 504's coverage. Section 504 provides, in pertinent part, that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). Thus, there are two distinct, yet related, questions into which the Court must inquire. First, it must determine whether Plaintiff's Amended Complaint alleges sufficient facts to plausibly infer that Defendant, during the relevant time period, received the type of "Federal financial assistance" regulated by § 504. Second, it must determine whether sufficient facts were pled to plausibly suggest that Defendant is a "program or activity" as defined by § 504.

---

[4]  Both parties have offered the above-cited formulation of a § 504 prima facie claim as the one that should apply to the instant dispute. Based on the acquiescence of the litigants and on this Court's inquiry into the matter, it is the verbalization that the Court has adopted as well.

**A. Plaintiff's factual allegations fail to plausibly suggest that Defendant received "Federal financial assistance" during the relevant time period.**

The Rehabilitation Act does not define the term "Federal financial assistance." Instead, regulations promulgated by the United States Department of Health and Human Services provide the following interpretation:

> (h) Federal financial assistance means any grant, loan, contract (<u>other than a procurement contract</u> or a contract of insurance or guaranty), or any other arrangement by which the Department provides or otherwise makes available assistance in the form of:
> (1) Funds;
> (2) Services of Federal personnel; or
> (3) Real and personal property or any interest in or use of such property, including:
> > (i) Transfers or leases of such property for less than fair market value or for reduced consideration; and
> > (ii) Proceeds from a subsequent transfer or lease of such property if the Federal share of its fair market value is not returned to the Federal Government.

45 C.F.R. § 84.3(h) (emphasis added).

Other federal courts in the Third Circuit have previously applied 45 C.F.R. § 84.3(h) to determine whether a plaintiff has adequately pleaded sufficient facts to infer that a defendant receives "Federal financial assistance." <u>See</u> <u>Sos v. Mack Trucks, Inc.</u>, Civ. A. No. 90-4824, 1991 WL 64596, at *5 (E.D. Pa. Apr. 23, 1991) (finding that because "the plaintiff has offered no evidence that [defendant] has any links with federal funding which would bring it within the scope of the Act . . . to put off the resolution of this case for more fishing expeditions by the plaintiff

would serve no purpose"), aff'd, 950 F.2d 723 (3d Cir. 1991); Martin v. Delaware Law Sch. of Widener Univ., 625 F. Supp. 1288, 1298 (D. Del. 1985) ("Plaintiff has not alleged that [Defendant] receives any federal financial assistance, or operates any program or activity receiving federal financial assistance, within the meaning of Section 794. Therefore, Plaintiff does not state a claim under Section 794 upon which relief may be granted."), aff'd, 884 F.2d 1384 (3d Cir. 1989); Bachman v. Am. Soc. of Clinical Pathologists, 577 F. Supp. 1257, 1264 (D.N.J. 1983) ("Given the sparse legislative history available concerning the Rehabilitation Act, considerable deference should be given to these administrative interpretations in ascertaining the meaning of 'federal financial assistance.'").

Moreover, the definition supplied by 45 C.F.R. § 84.3(h) closely aligns with the existing body of federal law clarifying the types of funding that are appropriately classified as "Federal financial assistance." See Bachman, 577 F.Supp at 1264 ("This definition confirms that the Act anticipates some transfer of funds from the federal Treasury or the transfer of something of value to the recipient of the assistance."). Several United States Courts of Appeals have confirmed that "an entity receives financial assistance when it receives a subsidy." See, e.g, DeVargas v. Mason & Hanger-Silas Mason Co., 911 F.2d 1377, 1382 (10th Cir. 1990) (citing Jacobson v. Delta Airlines, Inc., 742 F.2d 1202, 1208–09 (9th Cir.1984)). Thus, "in determining which programs are subject to the civil

rights laws, courts should focus not on market value but on the intention of the government to give a subsidy, as opposed to government intent to provide compensation." DeVargas, 911 F.2d at 1382 (quoting Jacobson, 742 F.2d at 1210) (internal quotations omitted)). Explaining this distinction, the Third Circuit has stated that "a garden-variety federal procurement contract (for goods or services) generally does not directly further a public-oriented purpose." Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233, 255 (3d Cir. 2001).

Similarly, several United States District Courts have observed that "[t]he term 'federal financial assistance' as used in § 794 does not comprehend government procurement contracts but rather refers to the form of grant assistance that goes primarily to public entities." Rogers v. Frito-Lay, Inc., 433 F.Supp. 200, 204 (N.D.Tex.1977). See also Cook v. Budget Rent-A-Car Corp., 502 F.Supp. 494, 496 (S.D.N.Y. 1980) (noting that "assistance . . . connotes such transactions as a transfer of government funds by way of a subsidy, or a sale of government assets at reduced consideration" but not "procurement contracts, that is, contracts in which goods or services are sold or purchased by the government for its own account at fair market value") (internal quotations omitted).

Having reviewed the legal meaning of the term "Federal financial assistance" in § 504, the Court now turns to the determination of whether Plaintiff's factual allegations are sufficient to plausibly allege that Defendant

received such assistance. First, it should be noted that Plaintiff's Amended Complaint avers that the purported discriminatory act, Defendant's refusal to accept Plaintiff back to work with accommodations, occurred between July 22, 2013 and September 25, 2013. ECF No. 17 at 4. Plaintiff's pleadings and exhibits extend to a much wider timeframe, encompassing fiscal years 2012 through 2014.

When determining the period during which a given entity was a recipient of federal funding in § 504 cases, several courts have noted that the relevant timeframe into which the court must inquire is the time at which the discriminatory act occurred. See Sharer v. Oregon, 581 F.3d 1176, 1178 (9th Cir. 2009) ("Defendants argue that [Plaintiff's] section 504 claim fails because [Defendant's organization] was not a 'program or activity receiving Federal financial assistance' at the time of the alleged discrimination. We agree."); Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 113 (2d Cir. 2001) ("[Defendant] does not dispute that at the time of the purported violation it was receiving federal financial assistance."); Crandall v. Paralyzed Veterans of Am., 146 F.3d 894, 896 (D.C. Cir. 1998) ("Thus both the formal start of the grant period and [Defendant's] contractual commitment came after the date of [Plaintiff's] dismissal. The district court was correct to hold that § 504 did not apply at the time of the alleged act of discrimination."); Bachman, 577 F. Supp. 1257, 1262 (D.N.J. 1983) ("Past recipients of federal financial assistance, such as [Defendant], are liable for

violations of the Rehabilitation Act which occurred during the time that they were recipients."); Brown v. Sibley, 650 F.2d 760, 770 (5th Cir. 1981) (holding that a § 504 claim was not cognizable unless "funds had been flowing to [the] project at the time the discrimination alleged in [the] case was perpetrated").

Consequently, the Court finds that the relevant allegations into which it must inquire are those that the Plaintiff has made relating to Defendant's receipt of federal funds during the 2013 fiscal year. Based on Plaintiff's allegations in the Amended Complaint and at Exhibit B, ECF No. 17, the Court finds that Plaintiff has not nudged its claim beyond "the line between possibility and plausibility of entitlement to relief."[5] Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The only allegations that Plaintiff's Amended Complaint and Exhibit B suggest are that an entity called "Baker Hughes Oilfield Operations, Inc." received four awards characterized as "Grants" for a value of "$0" each during that time period.

This absence of sufficient factual allegations is problematic for several reasons. First, the Court is largely in agreement with Defendant's observation that Plaintiff's exhibits are "unexplained and confusing." Def.'s Br. in Supp. of Mot. to Dismiss, ECF No. 21 at 6. First, Plaintiff's Exhibit B, which allegedly shows four

---

[5] "It is well-settled that in deciding a motion to dismiss, courts generally may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record." Beverly Enterprises, Inc. v. Trump, 182 F.3d 183, 190 n.3 (3d Cir. 1999) (citing Pension Benefit Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1196 (3d Cir.1993)).

awards of grant funding in the amount of "$0" each during 2013 is insufficient to plausibly infer receipt of any federal funding. Even taking as true the claim that Defendant received four grants totaling "$0," it is entirely unclear to the Court how Defendant actually received federal assistance at all. Surely the definition of "Federal financial assistance" contemplates receipt of a nonzero amount.[6]

Further, even though it deems them to be outside out of the relevant time period for the purposes of this case, the Court will now address the allegations in Plaintiff's Amended Complaint and attached exhibits that Defendant was awarded certain "Contracts."[7] The definition of "Federal financial assistance" quoted above and provided in 45 C.F.R. § 84.3(h) is the same one to which Plaintiff cited in his Amended Complaint. ECF No. 17 at 6. That definition expressly excludes "procurement contracts" from the scope of "Federal financial assistance."

Plaintiff's Amended Complaint and exhibits provide no context as to the nature of the awards that are characterized as contracts in the pleaded paragraphs or in the attached printouts. In fact, Plaintiff has provided no factual information

---

[6] The Court also notes that the alleged "Grants" from both the 2012 and 2014 fiscal year periods suffer from the same defect, as no other amount than "$0" is ascribed to them in Plaintiff's Exhibits. See ECF No. 17 at Exs. A, C.

[7] Plaintiff makes no allegation that Defendant received any awards that could be characterized as "Contracts" after the 2012 fiscal year. Neither is there any substance in Plaintiff's Amended Complaint or exhibits to show that any contracts preceding the 2013 fiscal year were executed for a term that included fiscal year 2013. As such, the Court finds that Plaintiff has not alleged sufficient facts to show that Defendant plausibly received any awards that could be characterized as "Contracts" during the relevant time period.

beyond the blunt allegation that several federal contracts existed in fiscal year 2012

to which Defendant was a party. There are no factual allegations in the Amended

Complaint addressing whether those "contracts" were anything other than

procurement contracts or whether their intent was to subsidize rather than merely

to compensate for services. In addition, it is important to recall that Plaintiff's

initial Complaint was dismissed precisely because its allegation that Defendant

received federal funding was vague and conclusory. Merely reciting certain legal

elements of the definition of "Federal financial assistance" is equally insufficient.

     Importantly, the Court also notes that the Third Circuit had, even before

Twombly and Iqbal were decided, already offered guidance for addressing core

procedural shortcomings that are based on public matters such as the one at hand.

In Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196

(3d Cir. 1993) (internal citations omitted), that court instructed:

> We now hold that a court may consider an undisputedly authentic
> document that a defendant attaches as an exhibit to a motion to
> dismiss if the plaintiff's claims are based on the document. Otherwise,
> a plaintiff with a legally deficient claim could survive a motion to
> dismiss simply by failing to attach a dispositive document on which it
> relied.

According to the Third Circuit, "a document integral to or explicitly relied upon in

the complaint may be considered without converting the motion to dismiss into one

for summary judgment." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)

(internal citations and quotations omitted) (emphasis in original). This is because

"the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." Id. (internal citations and quotations omitted). "[W]hat is critical is whether the claims in the complaint are based on an extrinsic document and not merely whether the extrinsic document was explicitly cited." Id. (internal quotations omitted).

This Court believes both that the present procedural defect is efficiently disposed of by reference to a similar public record and that Defendant has adequately pointed the Court's attention toward it. Though Plaintiff has chosen not attach any dispositive information detailing the nature of any of the enumerated awards it lists in its www.usaspending.gov exhibits, Defendant has suggested that Plaintiff's claims are readily nullified by reference to similar publicly available information on federal spending. See, e.g., Def.'s Reply Br. in Supp. of Mot. to Dismiss, ECF No. 25 at 6.[8]

---

[8] For other District Courts in this Circuit applying the integrated document rule set forth in Pension Benefit Guar. Corp., see In re Wellbutrin SR/Zyban Antitrust Litig., 281 F. Supp. 2d 751, 755 n.2 (E.D. Pa. 2003) (Kauffman, J.) (preliminary internal citations omitted):

> Generally, when deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. However, matters of public record may also be considered without converting the motion to dismiss into a motion for summary judgment. Courts have defined a public record to include published reports of administrative bodies. The fact that an agency report is "published" on the world wide web does not affect the Court's ability to take judicial notice of the contents of that report. See McLaughlin v. Volkswagen of Am., Inc., 2000 WL 1793071, at *1 (E.D.Pa.2000) (taking judicial notice of National Highway Traffic Safety Administration's website description

In fact, the Court finds that reference to the very website on which Plaintiff has relied is sufficiently authentic for this purpose.[9] Specifically, though the Plaintiff did not supply any context for any of the awards listed on his www.usaspending.gov printouts, that same website permits its user to discover and print more detailed information about each award simply by clicking the corresponding "Award ID." This information includes the "Purchaser," "Contract Information," and "Place of Performance," among other items. The Court notes that for each of the ten "Contracts" that appear in the exhibits to Plaintiff's Amended Complaint, the field "Award Type" under "Contract Information"

---

of vehicle recall in considering a 12(b)(1) motion); see also In re AgriBiotech Sec. Litig., 2000 WL 1277603, at *2, 2000 U.S. Dist. LEXIS 5643, at *4–5 (D.Nev.2000) (taking judicial notice of official government documents available on the world wide web). Accordingly, the Court will take judicial notice of the FDA's Center for Drug Evaluation and Research Listing of New & Generic Drug Approvals 1998—2003 and its listing of bupropion hydrochloride which is available at <http:// www.fda.gov/cder/approval/b.htm>.

See also Mawson v. Pittston Police Dep't, No. Civ.A. 3:13-1714, 2014 WL 3735133, at *1 n.1 (M.D. Pa. July 28, 2014) (Mannion, J.) (taking judicial notice of plaintiff's conviction as it was "part of a public record" that "was available for public access via the Unified Judicial System Pennsylvania Web Portal"); Stein v. City of Philadelphia, No. CIV.A. 13-4644, 2013 WL 6408384, at *9 (E.D. Pa. Dec. 5, 2013) (Tucker, C.J.), reconsideration denied, No. CIV.A. 13-CV-4644, 2014 WL 338728 (E.D. Pa. Jan. 30, 2014) ("Pages found on the City of Philadelphia Website are matters of public record."); Starks v. Coloplast Corp., No. CIV.A. 13-3872, 2014 WL 617130, at *2 (E.D. Pa. Feb. 18, 2014) (McLaughlin, J.) ("FDA reports published on the FDA website are public records that the court may judicially notice.").

[9] To the extent that Plaintiff disputes the authenticity of the entries on www.usaspending.gov, the only factual resource on which the Amended Complaint relies, the Court finds that such an argument would necessarily bear negatively upon the plausibility of Plaintiff's claims in the first place. See Wischnewski v. NRG Energy, Inc., No. 13-CV-1231A, 2015 WL 4067155, at *6 (W.D.N.Y. July 2, 2015) (Scott, Mag. J.) (electing to "disregard the [newspaper] articles" relevant to a § 504 claim that had "run into evidentiary problems" because "Plaintiff ha[d] no personal knowledge" of the underlying facts).

contains the entry "PO Purchase Order" and the field "Contracting Office ID"
under "Purchaser" contains the entry "Headquarters Procurement Services." Thus,
although this determination is not essential to its decision to dismiss Plaintiff's
Amended Complaint, the Court recognizes that reference to the publicly available,
government-maintained database from which Plaintiff derives its core factual
allegations appears to indicate that the underlying "contract" awards are actually
procurement contracts, which are explicitly excluded from the definition of
"Federal financial assistance."[10]

### B. Plaintiff's factual allegations are insufficient to plausibly suggest that Defendant is a "program or activity" covered by § 504.

In Part III.B, <u>supra</u>, the Court concluded that Plaintiff has failed to allege
sufficient facts plausibly suggesting that Defendant received "Federal financial
assistance" during the relevant time period. However, even assuming, <u>arguendo</u>,
that Plaintiff's allegations are sufficient on that point, the Court finds that Plaintiff
further fails to allege sufficient facts plausibly suggesting that Defendant is a
"program or activity" covered by § 504. By definition, the term "program or
activity" in § 504 extends to entire corporations only in two limited conditions.

---

[10] Relatedly, the Court finds Plaintiff's reference to Defendant's status as a "federal contractor"
under § 503 in its Brief in Opposition to Defendant's Motion to Dismiss unpersuasive. <u>See</u>
ECF No. 24 at 6. Not only does the United States Court of Appeals for the Third Circuit not
permit private rights action under that provision, <u>Beam v. Sun Shipbuilding & Dry Dock Co.</u>,
679 F.2d 1077 (3d Cir. 1982) (per curiam), but it does not in any way further the key factual
allegation that Plaintiff has failed to plausibly make: namely, that Defendant received
"Federal financial assistance" as earlier defined.

The first occurs "if assistance is extended to such corporation . . . <u>as a whole</u>." 29 U.S.C. § 794(b)(3)(A)(i) (emphasis added). The second occurs if the corporation "is principally engaged in the business of providing education, health care, housing social services, or parks and recreation." 29 U.S.C. § 794(b)(3)(A)(ii). Plaintiff's Amended Complaint fails to supply facts adequately alleging that either statutory condition applies to Defendant.

Plaintiff does not allege that Defendant "is principally engaged" in any one of the quasi-public industries listed in 29 U.S.C. § 794(b)(3)(A)(ii). Instead, the crux of Plaintiff's Amended Complaint is that Defendant receives federal financial assistance "as a whole" as set forth in 29 U.S.C. § 794(b)(3)(A)(i). "The only point at issue here is whether Plaintiff has sufficiently alleged that Defendant is a recipient of financial assistance such that it is subject to Section 504 of the Rehabilitation Act." Pl.'s Br. in Opp'n to Mot. to Dismiss at 4, ECF No. 24.

At the outset, it is important to recognize that Plaintiff seeks to stretch to a wholly private corporation the application of a federal anti-discrimination statute that Congress fashioned to regulate only certain public entities and recipients of federal funds. Section 504 of the Rehabilitation Act does not share the broad applicability of other federal anti-discrimination legislation purposefully drafted by Congress to reach any employer who has hired a minimum number of employees or who engages in interstate commerce. This much is clear from the face of § 504,

which explicitly limits its coverage to "any program or activity receiving Federal financial assistance or [ ] any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). Therefore, if "an entire corporation" does not satisfy either of the two specific coverage conditions outlined above and enumerated at U.S.C. § 794(b)(3)(A)(i)–(ii), it need not comply with § 504.[11]

Section 504's necessarily narrow coverage as it relates to corporations and other privately-held organizations is clear as a matter of straightforward statutory interpretation. Congress's explicit enumeration of those limited exceptions in which an "entire corporation" may fall within § 504's reach affirmatively forecloses any alternative theories of liability. See Conoco, Inc. v. Skinner, 970 F.2d 1206, 1226 (3d Cir. 1992) (quoting Andrus v. Glover Constr. Co., 446 U.S. 608, 616–17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.")).

Moreover, the limited applicability of § 504 to corporations is evident from

---

[11] Even when it does not apply to "an entire corporation," § 504 may still apply to "the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended." 29 U.S.C 794(b)(3)(B). Plant- or geographic-based coverage, however, is not at issue on this Motion. Plaintiff has at no time alleged any facts suggesting that Defendant received federal funding at its Mill Hall, Pennsylvania facility where Plaintiff worked or, vice versa, that the Plaintiff ever worked at any of Defendant's locations that actually received the alleged grant funding. Thus, as a matter of law and of the pleadings in this case, Plaintiff's sole theory of relief must be that Defendant received Federal financial assistance "as a whole" under 29 U.S.C. § 794(b)(3)(A)(i).

the history of Congressional redefinitions of the term "program or activity" as it appears in the Rehabilitation Act and similar anti-discrimination statutes. In 1984, the Supreme Court of the United States in <u>Grove City College v. Bell</u>, 465 U.S. 555, 569 (1984), narrowed the term "program or activity" in Title IX of the Education Amendments of 1972 to permit only "program-specific" and not "institutionwide coverage." In response, Congress passed the Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28. The Civil Rights Restoration Act reinstituted a broader notion of the term "program or activity" for several anti-discrimination statutes, including § 504, by providing express definitions of the phrase "program or activity" in each statute.

The definition enacted by the Civil Rights Restoration Act is the same one that appears in § 504 today. Though Congress chose to broaden the definition of "program or activity" as it relates to "all of the operations" of certain public entities, it did not do the same for private ones. Instead, it expressly provided for more limited coverage if a particular "plant or other comparable, geographically separate facility" was that company's only nexus with federal funding. <u>Compare</u> 29 U.S.C. § 794(b)(1)–(2) (covering "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government" regulated by § 504) <u>with</u> 29 U.S.C. § 794(b)(3)(B) (covering "the entire plant or other comparable, geographically separate facility to which Federal

financial assistance is extended" if assistance is not extended "as a whole"). <u>See also</u> <u>Boswell v. SkyWest Airlines, Inc.</u>, 217 F. Supp. 2d 1212, 1216 (D. Utah 2002), <u>aff'd</u>, 361 F.3d 1263 (10th Cir. 2004) ("Therefore, with respect to private organizations . . . the statutory definition of 'program or activity' was not expanded to the pre-<u>Grove City</u> institution-wide definition."); <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167 (2009) ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally.").

The primary reason for this narrow application of § 504 to corporations is apparent: acceptance of federal funding by a private corporation is effectively one side of a contractual <u>quid pro quo</u>, with § 504's anti-discrimination provisions functioning as reciprocal conditions on the bargain. The federal government agrees to allocate funding to a private-sector entity as a whole or in part with the understanding that the funded entity or the particular division for which the funds were earmarked must abide by § 504. This way, § 504 permits the government to ensure that its disbursements to private entities do not fund discrimination.

As the Supreme Court of the United States remarked in <u>U.S. Dep't of Transp. v. Paralyzed Veterans of Am.</u>, 477 U.S. 597, 605 (1986):

> Congress limited the scope of § 504 to those who actually "receive" federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds. "Congress apparently determined that it would require contractors and grantees to bear the costs of providing employment for the handicapped as a <u>quid pro quo</u> for the receipt of

federal funds." <u>Consolidated Rail Corporation v. Darrone</u>, 465 U.S. 624, 633, n. 13, 104 S.Ct. 1248, 1254, n. 13, 79 L.Ed.2d 568 (1984). We relied on this same rationale in <u>Grove City College v. Bell</u>, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), where we noted that the recipient of the federal assistance—the college—was free to terminate its participation in the federal grant program and thus avoid the requirements of Title IX. Id., at 565, n. 13, 104 S.Ct., at 1217, n. 13. Under the program-specific statutes, Title VI, Title IX, and § 504, Congress enters into an arrangement in the nature of a contract with the recipients of the funds: the recipient's acceptance of the funds triggers coverage under the nondiscrimination provision.

Consequently, to be bound at all by § 504, a corporation must first consent to regulation by accepting government funding. Absent such a willing receipt on the part of a corporation, it cannot be reached by a litigant asserting a § 504 claim. Overall, this acceptance requirement "ensures that innocent programs will not be penalized for violations of anti-discrimination statutes perpetuated in other programs of the same organization." <u>Bachman</u>, 577 F. Supp. at 1263. Thus, "[i]t is not enough . . . to show that a person has been discriminated against by a recipient of federal funds. Plaintiff must also show that she was subject to discrimination under the program or activity for which those funds were received." <u>Id.</u> at 1262.[12]

Turning to the present dispute, this Motion's underlying issues are closely

_____

[12] Relatedly, the Supreme Court of the United States has clarified that "entities that only benefit economically from federal assistance" are not statutory "recipients." <u>Nat'l Collegiate Athletic Ass'n v. Smith</u>, 525 U.S. 459, 468 (1999). <u>See also</u> <u>Olschefski v. Red Lion Area Sch. Dist.</u>, No. 1:12-CV-871, 2012 WL 6003620, at *8 (M.D. Pa. Nov. 30, 2012) (Rambo, J.) ("[L]iability under the Rehabilitation Act is limited to the entity who directly receives the federal funds. The Rehabilitation Act does not apply to those individuals who merely derive an indirect benefit from the aid or receive compensation from an entity that directly receives the aid.").

aligned with those presented in <u>Boswell v. SkyWest Airlines, Inc.</u>, a 2002 decision

issued by Judge Paul G. Cassell in the United States District Court for the District

of Utah later affirmed by the United States Court of Appeals for the Tenth Circuit.

217 F. Supp.2d 1212 (D. Utah 2002), <u>aff'd</u>, 361 F.3d 1263 (10th Cir. 2004).

Because she experienced difficulty breathing due to a lung disease, Plaintiff Susan

Boswell requested that Defendant SkyWest Airlines, a private air carrier, provide

her with supplemental oxygen during certain flights on the airline. <u>Id.</u> at 1213.

SkyWest refused to do so. <u>Id.</u>

At the time, SkyWest was receiving upwards of $1.9 million in federal

financial assistance from the United States Department of Transportation's

Essential Air Service (EAS) Program. <u>Id.</u> at 1214. SkyWest received this funding

from the EAS Program in exchange for agreeing to serve rural airports on

potentially unprofitable routes. <u>Id.</u> at 1217. SkyWest flew three EAS subsidized

routes: (i) the Salt Lake City, Utah to Cedar City, Utah route; (ii) the Merced,

California to Los Angeles, California route; and (iii) the Crescent City, California

to San Francisco or Sacramento, California route. <u>Id.</u>

Boswell sued SkyWest under § 504 of the Rehabilitation Act, asserting that

the airline "receives federal financial assistance." <u>See id.</u> at 1215. SkyWest filed a

motion for summary judgment, which the court granted. <u>See id.</u> at 1224. Judge

Cassell wrote that "because SkyWest receives neither financial assistance as a

whole nor financial assistance on this particular route," it "has no obligation to accommodate Boswell's request for medical oxygen under Section 504." Id. at 1214. The Court explained that "[w]hile the term 'program or activity' includes all the operations of certain public entities, it does not include all operations of a private entity if that private entity receives federal funds for a specific and limited purpose." Id. at 216.

According to the court, SkyWest "[did] not receive federal financial assistance 'as a whole' from DOT," and it "[did] not receive the EAS Program money generally." Id. at 1218. Ultimately, SkyWest was receiving federal assistance not "as a whole" but in a format "designated for a particular purpose" and for "particular route[s]." See id. at 1215–16. As such, the court concluded that SkyWest did not receive federal financial assistance "as a whole" or for the routes on which Boswell rode. Id. at 1219. Thus, Section 504 did not apply. Id.[13]

---

[13] For a similar case with the same disposition, see Doe v. Salvation Army, No. 2:05-CV-00901, 2010 WL 4939628, at *9 (S.D. Ohio Nov. 30, 2010) rev'd on other grounds and remanded sub nom. Doe v. Salvation Army in U.S., 685 F.3d 564 (6th Cir. 2012):

> From the uncontested evidence of record, the Court finds that The Salvation Army is not receiving funding as a whole. Rather than receiving general assistance from the federal government, The Salvation Army allows its local units to seek and apply for federal assistance. The funding from these applications goes to the local units. Under these circumstances, the Court is unwilling to find that Rehabilitation Act applies to The Salvation Army's entire organization under 29 U.S.C. § 794(b)(3)(A)(i).

Doe was reversed on other grounds, namely, on the question of whether the Salvation Army was "principally engaged" in one of the statutorily enumerated quasi-public industries. The

The court in <u>Boswell</u> also relied upon the relevant legislative history behind Congress's use of the phrase "as a whole" in § 504. This Court finds that guidance particularly instructive in the present dispute. The legislative history, which refers to the Civil Rights Restoration Act of 1987 as "S. 557," reads in pertinent part as follows:

C. Corporations and Other Private Entities

The bill provides that a corporation, partnership, or other private organization or sole proprietorship will be covered in its entirety if it receives federal financial assistance which is extended to it as a whole or if it is principally engaged in certain kinds of activities. In all other instances, coverage will be limited to the geographically separate plant or facility which receives the federal funds.

Federal financial assistance extended to a corporation or other entity "as a whole" refers to situations where the corporation receives general assistance that is not designated for a particular purpose. Federal financial assistance to the Chrysler Company for the purpose of preventing the company from going bankrupt would be an example of assistance to a corporation "as a whole." Federal aid which is limited in purpose, e.g., Job Training Partnership Act (JPTA) funds, is not considered aid to the corporation as a whole, even if it is used at several facilities and the corporation has the discretion to determine which of its facilities participate in the program. A grant to a religious organization to enable it to extend assistance to refugees would not be assistance to the religious organization as a whole if that is only one among a number of activities of the organization. Further, federal financial assistance that is earmarked for one or more facilities of a private corporation or other private entity when it is extended is not assistance to the entity "as a whole." Nor does S. 557 embody a notion of "freeing up." Federal financial assistance to a corporation for particular purposes does not become assistance to the corporation

District Court's determination on the merits as it related to receipt of federal funds "as a whole" was undisturbed. <u>See</u> <u>Doe</u>, 685 F.3d at 570.

as a whole simply because receipt of the money may free up funds for use elsewhere in the company.

      In specifying limited coverage of an entire plant as the geographically separate facility," the bill refers to facilities located in different localities or regions. Two facilities that are part of a complex or that are proximate to each other in the same city would not be considered geographically separate.

      . . .

      If a corporation, partnership, other private organization, or sole proprietorship is not principally engaged in one of the activities delineated above, and receives federal financial assistance which is not extended to it "as a whole," only the full operations of the geographically separate facility will be covered by the civil right laws.

      Example:

      . . .

      If the Dearborn, Michigan plant of General Motors is extended federal financial assistance for first aid training through the state department of health, all of the operations of the Dearborn plant are covered.

S. Rep. No. 100–64, at 17–19 (1987).

Addressing a similar issue in 2012, the United States District Court for the District of Oregon, in a decision later affirmed by the United States Court of Appeals for the Ninth Circuit, considered whether § 504 could reach several of the country's largest banks. In <u>Blair v. Bank of America, N.A.</u>, No. 10-CV-946-SI, 2012 WL 860411 (D. Or. Mar. 13, 2012), <u>aff'd sub nom.</u> <u>Blair v. Bank of Am.</u>, 573 F. App'x 665 (9th Cir. 2014), Plaintiff Willis G. Blair alleged that several defendants, including Bank of America, N.A. and Citibank, N.A, serviced his residential mortgage or extended him various lines of credit. <u>See</u> 2012 WL 860411, at *1. Blair suffered from chronic physical disabilities and was unable to work for

a period of several months due to his health conditions. See id. at *1–2. When Blair contacted the Defendants to inform them of his disability and his need for a temporary extension, his requests were allegedly refused. Id. at *2. Blair then claimed that Bank of America and Citibank violated § 504 by discriminating against him on the basis of his disability. See id. at *2–3. The District Court disagreed and granted the Motion to Dismiss filed by Bank of America and Citibank as it related to Blair's § 504 claim. Id. at *5.

Blair had alleged that Bank of America and Citibank were covered by § 504 of the Rehabilitation Act because they "were the recipients of federal funds pursuant to the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201 et seq., as amended by the American Recovery and Reinvestment Act of 2009, . . . under which the United States Treasury invested approximately $245 billion in financial institutions and guaranteed certain of their assets." Id. at *2. Among other allegations, Blair also claimed that the Defendants had participated in a variety of federal forbearance and credit card support programs. See Id.

Bank of America and Citibank argued that the Motion to Dismiss should be granted because "neither set of Defendants receives 'federal financial assistance.'" Id. at *5. Moreover, the Defendants asserted that they had never received federal assistance "as a whole." Id. Thus, they suggested that "Plaintiff still has not alleged sufficient facts to make out a prima facie case under . . . § 504." Id. The court

agreed, noting that it found the Defendants' arguments sufficiently "persuasive." Id. It then dismissed Blair's § 504 claims with prejudice. Id.

The United States District Court for the Eastern District of Pennsylvania in two separate cases has also refused to recognize potential § 504 claims where the plaintiff has failed to offer a sufficient factual basis. The first was Phillips v. Goldsteins', Rosenbergs', Raphael-Sachs, Inc., No. CIV.A. 12-3833, 2013 WL 6506170 (E.D. Pa. Dec. 10, 2013) (Quiñones Alejandro, J.). Phillips involved a claim by deaf individuals against a funeral home that refused to provide a sign language interpreter at the funeral services for the Plaintiffs' father. Id. at *1. The Plaintiffs contended that the funeral home was a recipient of federal financial assistance because it accepted limited funeral expense payments for certain qualifying veterans from the United States Department of Veterans Affairs. Id. at *4. The Court disagreed and granted summary judgment in favor of the funeral home. Id. at *1. It held that the funding was "intended for the reimbursement and/or payment for funeral services" and therefore "not intended to subsidize." Id. at *5. It also determined that because the payment "inures to the benefit of the deceased veteran, not the funeral director," the funeral home was not a recipient of federal financial assistance. Id.

Second, in an opinion later affirmed by the United States Court of Appeals for the Third Circuit, Judge Raymond J. Broderick addressed a § 504 claim

brought by Plaintiffs John and Mary Schrader against Defendant Gulf Oil.

Schrader v. Gulf Oil, No. CIV. A. 93-6794, 1994 WL 672640, at *1 (E.D. Pa. Nov. 28, 1994), aff'd sub nom. Schrader v. Gulf Oil &/or its Successor in Interest, Chevron USA, 65 F.3d 163 (3d Cir. 1995). Mr. Schrader, an employee at Gulf Oil, sustained a work-related shoulder injury and took disability leave. Id. at *2. Shortly thereafter, he was fired. Id. Upon review, the Court noted that the Plaintiffs "failed to provide any deposition, answer to interrogatories, admission, or affidavit showing that Federal financial assistance has been extended to Chevron 'as a whole' or to 'the entire plant or other comparable, geographically separate facility.'" Id. at *5. Consequently, the Court determined that summary judgment was warranted because the Plaintiffs had failed to make a "sufficient" showing that Defendant was covered by § 504's receipt "as a whole" provision. Id.

In the present case, nothing in Plaintiff's Amended Complaint or its accompanying exhibits alleges any factual matter establishing the "program or activity" that allegedly discriminated against him. In fact, it is Defendant who points out that Plaintiff has erroneously named, or at least has not clearly stated, his official employer in the Amended Complaint. See n.1, supra. Even without relying on this observation, the Court itself finds that Plaintiff's Amended Complaint is unclear as to which corporate entity was actually Plaintiff's employer. The Court also finds that Plaintiff has failed to allege sufficient facts

connecting the entities listed in its exhibits to those for whom Plaintiff worked. Although they may in fact be the same organizations, the Court finds the Amended Complaint unclear on the matter.[14]

Although Plaintiff is not required to plead a specific legal theory, he still, at a minimum, must have pleaded sufficient facts to plausibly suggest that Defendant was covered by § 504 at the time of the allegedly discriminatory act. See Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 346–47 (2014) (per curiam). Instead, Plaintiff has alleged no facts that permit this Court to plausibly infer that Defendant falls within any of the conditions that allow § 504 to reach private corporations. That's because Plaintiff has alleged no facts whatsoever detailing the scope, purpose, extent, or place of performance for any of the claimed grant awards.

Moreover, similar to the allegations regarding receipt of "contracts" that Plaintiff purports to show with his exhibits, the Court finds that the validity of the "grant" entries is also largely nullified by publicly accessible information on the www.usaspending.gov platform, the integral source on which Plaintiff has relied.

---

[14] Relatedly, the Court finds Plaintiff's reference to the Title IX definition of "program" in its Brief in Opposition to Defendant's Motion to Dismiss unpersuasive. See ECF No. 24 at 7–8. That argument misses a key statutory distinction in § 504: Once it is established that an "entire corporation" is a "program or activity" within the meaning of § 504, only then do the statute's prohibitions apply broadly to "all operations" of that corporation. However, that broad coverage is not effective until it is determined, as a threshold matter, that the entire corporation is a covered program under § 504 by virtue of its receiving federal assistance "as a whole." 29 U.S.C. § 794(b)(3)(A)(i). That threshold determination is the procedural issue presently in dispute.

Again, simply by clicking "Award ID," several details about each grant become visible. Those details provide information about the "Recipient," "Project Award," and "Principal Place of Performance." The Court notes that for each of the eleven "grants" that appear in the exhibits to Plaintiff's Amended Complaint, the fields "State" and "City or County" under the "Principal Place of Performance" category contain the entries "Texas" and "Houston," respectively. No grants have a "Pennsylvania" entry. The Court notes that Plaintiff did not provide any of these search details when it attached its list of exhibits to its Amended Complaint. Overall, though the Court believes this matter can readily be disposed of on other grounds detailed above, it does appear that the entirety of the grant funding, if any, was directed not "as a whole" but specifically to the Defendant's Houston, Texas facility for local purposes.[15]

This brings the Court to two important concluding observations. The first is that this case is a prime example of the type of pleading that the United States Court of Appeals for the Third Circuit has previously cautioned against in the Pension Benefit Guar. Corp. case. Had Plaintiff simply attached the exact details of the actual nature and extent of the purported awards rather than merely a facial printout, it would be highly evident that the Amended Complaint did not state a

---

[15] Recall that these shortcomings must be considered with the fact that every one of the entries in the exhibits to Plaintiff's Amended Complaint that falls in the category "grants" also contains an "Award Amount" of "$0."

plausible claim. Instead, in the Court's view, Plaintiff attempted to "survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Id. at 196. Any other outcome would empower prospective claimants to artfully plead claims based on § 504 violations in a way that attempts to extend § 504's coverage to entities that Congress never intended it to reach.

Likewise, this Court notes that the keystone provision of the Federal Rules of Civil Procedure commands that the Rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The Court thus finds that Plaintiff's requests for leave to amend and to conduct discovery would both be futile, as the limited factual allegations Plaintiff has put forth fail "to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]." Twombly, 550 U.S. at 556. As Judge Richard A. Posner observed in a similar action:

> Behind both Twombly and Iqbal lurks a concern with asymmetric discovery burdens and the potential for extortionate litigation . . . . In most suits against corporations or other institutions, and in both Twombly and Iqbal—but also in the present case—the plaintiff wants or needs more discovery of the defendant than the defendant wants or needs of the plaintiff, because the plaintiff has to search the defendant's records (and, through depositions, the minds of the defendant's employees) to obtain evidence of wrongdoing. With the electronic archives of large corporations or other large organizations holding millions of emails and other electronic communications, the cost of discovery to a defendant has become in many cases astronomical. And the cost is not only monetary; it can include, as

well, the disruption of the defendant's operations. If no similar costs are borne by the plaintiff in complying with the defendant's discovery demands, the costs to the defendant may induce it to agree early in the litigation to a settlement favorable to the plaintiff.

Swanson v. Citibank, N.A., 614 F.3d 400, 411 (7th Cir. 2010) (Posner, J., dissenting) (internal citations omitted). Based on the inadequacy of the factual allegations Plaintiff has thus far pleaded, this Court believes that the instant case presents a similarly high potential for the kind of "extortionate litigation" contemplated above. As a consequence, discovery will not be ordered.

## IV. CONCLUSION

To survive a motion to dismiss, a plaintiff need only allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Plausibility is a "context-specific" standard that "requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 663–64. For a claim that a corporation violated § 504 of the Rehabilitation Act, plausibility must at least require sufficient facts to infer that the accused received federal financial assistance in a way that made it a covered program under § 504. In other words, it must require pleading sufficient facts to infer that the defendant was actually bound by § 504 at all. "Where a defendant is not the recipient of federal funds, the defendant is beyond the reach of the Act, and a court may dismiss a plaintiff's claim against such defendant." Phillips, 2013 WL 6506170, at *3. Because

Plaintiff's Amended Complaint fails to plead sufficient facts plausibly suggesting that it is entitled to relief, Defendant's Motion to Dismiss is granted with prejudice.

An appropriate Order follows.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge